**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEGION CONSTRUCTION, INC.
248 Mill Road, Building 2, Suite 1
Chelmsford, MA 01824

      and

PETER A. IANUZZI, JR.
35 Devonshire Crossing
Chelmsford, MA 01824

         Plaintiffs,

      v.

SLOAN D. GIBSON,
Acting Secretary of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420

JAN R. FRYE,
Veterans Affairs Debarring Official
Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420

      and

DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Avenue, N.W.
Washington, D.C. 20420

        Defendants.

Civ. No. _____

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Plaintiffs Legion Construction, Inc. and Peter A. Ianuzzi, Jr. (collectively, "Plaintiffs") bring this Complaint for declaratory, injunctive, and mandamus relief, and allege as follows:

## INTRODUCTION

1.    Peter A. Ianuzzi, Jr. ("Ianuzzi") is the president and owner of Legion Construction, Inc. ("Legion").  For nearly two years, both Ianuzzi and Legion have been disqualified from obtaining new federal construction contracts by the Department of Veterans Affairs ("VA") even though they have never received a final debarment decision.  Instead, the government has consistently ignored deadlines for prompt action imposed by the Federal Acquisition Regulation and thereby kept Plaintiffs waiting for a decision while Legion's once-successful construction business fails.  This unlawful withholding and unreasonable delay of a non-discretionary agency decision violates the Administrative Procedure Act, 5 U.S.C. § 706(1), and in the context of this case represents a de facto debarment of the Plaintiffs in defiance of the applicable regulatory framework.  With all other avenues for relief having failed, Plaintiffs are left with no other choice than to bring this action.

## PARTIES

2.    Plaintiff Legion Construction, Inc. ("Legion") is a construction company founded in 2006 and based in Chelmsford, Massachusetts.  Legion is a service-disabled veteran-owned small business that completes construction projects in New England and the Northeast United States pursuant to contracts with the VA and other federal agencies.

3.      Plaintiff Peter A. Ianuzzi, Jr. ("Ianuzzi") is the president and owner of Legion. He is a service-disabled veteran of the United States Marine Corps, having served in a field artillery company from 1994 to 1998 and obtained the rank of E-5 Sergeant.  His military service rendered him 20% disabled.   After leaving the Marine Corps and working for construction companies in Massachusetts, Ianuzzi joined Legion in 2006 and became the company's president in 2010.

4.      Defendant Sloan D. Gibson is the Acting Secretary of Veterans Affairs, with offices at 810 Vermont Avenue, N.W., Washington, D.C., 20420.  He is sued in his official capacity.

5.      Defendant Jan R. Frye is Deputy Assistant Secretary for Acquisitions and Logistics at the Department of Veterans Affairs, with offices at 810 Vermont Avenue, N.W., Washington, D.C., 20420.  He is sued in his official capacity as the Veterans Affairs Debarring Official.

6.      Defendant VA is a department of the United States Government with offices at 810 Vermont Avenue, N.W., Washington, D.C., 20420.  Unless otherwise noted, the three Defendants will be collectively referred to as the "VA."

## JURISDICTION AND VENUE

7.      This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–596, 701–706, *et seq.*  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201–2202.

8.      There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court.

9.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## LEGAL FRAMEWORK

10.    Subpart 9.4 of the Federal Acquisition Regulation ("FAR") provides the regulatory procedures and administrative background governing contractor suspension and debarment.  48 C.F.R. §§ 9.400–9.409 (by convention, hereinafter referenced as FAR 9.400–9.409).

11.    The FAR recognizes that suspension and debarment are "serious" in nature and that these sanctions should "be imposed only in the public interest for the Government's protection and not for purposes of punishment."  FAR 9.403(b).  There are equally serious consequences of even being considered for debarment: "Contractors debarred, suspended, or [even merely] proposed for debarment are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors, unless the agency head determines that there is a compelling reason for such action."  FAR 9.405(a).

12.    Consequently, the FAR provides for strict regulatory procedures governing how and how long a contractor can remain on the debarment list.  Courts have long recognized that a "de facto" debarment—that is, effectuating a debarment without adhering to the procedures laid out in the regulations—is an unlawful circumvention of these regulatory requirements.

13.    The first debarment stage is a "suspension."  A suspension may be imposed to protect the government during the pendency of an investigation or legal proceedings.  FAR 9.407-1.  By its nature, a suspension is a temporary measure that may last a maximum of 12 months, unless extended for another six months at the request of an Assistant Attorney General. FAR 9.407-4(b).

14.     To institute an actual debarment, an agency must first provide the targeted contractor with notice.  FAR 9.406-3(c).  The agency's notice must provide the agency's reasons for considering debarment at a sufficient level of detail such that the contractor can meaningfully respond.  *Id.*  A contractor facing a proposed debarment is then permitted to submit "information and argument in opposition to the proposed debarment, including any additional specific information that raises a genuine dispute over the material facts."  FAR 9.406-3(c)(4).

15.     In circumstances where there are no disputes over material facts, "the debarring official shall make a decision on the basis of all the information in the administrative record, including any submission made by the contractor . . . . within 30 working days after receipt of any information and argument submitted by the contractor, unless the debarring official extends this period for good cause."  FAR 9.406-3(d)(1).  The final debarment decision must be supported by a preponderance of the evidence.  FAR 9.406-3(d)(3).

16.     The suspension and debarment process is subject to review under the APA. Failure to follow the FAR timelines can constitute "agency action unlawfully withheld or unreasonably delayed" in violation of 5 U.S.C. § 706(1).  And a final debarment decision may be set aside if "arbitrary" and "capricious" pursuant to 5 U.S.C. § 706(2).

- 5 -

## FACTUAL ALLEGATIONS

17.     This action is a narrow, procedural challenge to the VA's continued and unlawful delays in issuing a final debarment decision as to Plaintiffs Legion and Ianuzzi.   Though Plaintiffs vigorously contest the justification for being disqualified from government contracting, their right to relief in this case is independent of the underlying merits of the debarment process. The factual allegations in this Complaint therefore focus on the procedural history of the VA's suspension and debarment actions and on the irreparable harm that will be suffered by Plaintiffs in the absence of a prompt final decision.

## I.     Legion's History as a Government Contractor

18.     Legion was founded in 2006.   Ianuzzi became Legion's president in 2010 and is now the 100% owner of the company.   Since its founding, at least 51% of Legion's outstanding shares were owned by service-disabled veterans.

19.     Under Ianuzzi's leadership and direction, Legion grew from a three-person company into a successful government contractor completing construction projects in New England and the Northeast United States, with more than 40 employees at its peak.

20.     To date, Legion has completed nearly 300 federal contracts.   Legion has always received ratings from the VA of satisfactory or better on its contracting projects, and never had a contract terminated.   Legion's personnel have proudly completed every construction job they started.

21.     Legion's growth allowed the company to engage in veterans outreach programs, including donating food and supplies to VA facilities and participating in veterans hiring initiatives.

22.     Because Ianuzzi is a service-disabled veteran of the Marine Corps, Legion qualifies as a service-disabled veteran-owned small business ("SDVOSB").   Since 2010, Legion's SDVOSB status has been confirmed at least six times by the VA and other federal agencies.

23.     The VA does not dispute that Legion is currently a SDVOSB.

24.     Legion's current business consists entirely of performing construction projects pursuant to government contracts with the VA.   In 2011, Legion's gross receipts were $31,143,293.  At the end of 2011, the outstanding value of Legion's federal construction projects then in progress exceeded $40,000,000.  At its peak, Legion employed more than 40 employees.

## II.     The VA's Suspension and Proposed Debarment of Plaintiffs

25.     On November 2, 2012, the VA suspended Plaintiffs, citing a federal criminal proceeding against David Gorski, a former minority owner of Legion who allegedly had improperly self-certified Legion as an SDVOSB.

26.     Under the FAR, this suspension could last for a maximum of 12 months, unless extended by an Assistant Attorney General, in order to enable the government to conduct a full investigation.  No extension was requested here.

27.     The VA failed to remove Plaintiffs from the suspension list at the end of this one-year period.  No explanation was given for this failure or in justification of the delay.

28.     On November 7, 2013, counsel for Plaintiffs inquired as to the status of their suspension and why it had persisted beyond the one-year deadline. Counsel also asked for the opportunity to present evidence that would demonstrate Plaintiffs were presently responsible and thus should be removed from the debarment list.   VA officials promised to provide this opportunity prior to making any decision adversely affecting Plaintiffs.

29.     The VA reneged on its promise. Without any warning and without reference to its prior unlawful decision to extend Plaintiffs' suspension beyond the one-year maximum, the VA issued notices of proposed debarment, signed by Defendant Frye, to both Legion and Ianuzzi on December 30, 2013.

30.     With the VA's consent, Plaintiffs submitted a timely response to the notices on March 20, 2014.  The VA's final debarment decision was due 30 working days later.

31.     Once again, the VA ignored this deadline. Throughout the spring of 2014, Plaintiffs' counsel again contacted VA officials seeking an explanation for the delay and requesting a final debarment decision.

32.     On June 2, 2014, Defendant Frye sent Plaintiffs a letter indicating that the VA was unilaterally finding "good cause" to extend its deadline for a final decision until the conclusion of Gorski's trial.

33.     Defendant Frye's letter, in relevant part, read:

I am in receipt of your letter dated March 20, 2014 and your email message dated May 20, 2014, each in response to the Notice of Proposed Debarment dated December 30, 2013.  Federal Acquisition Regulation (FAR) 9.406-3(d)(1) mandates that I make a decision within 30 working days after receipt of any information and argument submitted by Legion Construction and Mr. Ianuzzi, unless I extend this period for good cause.  Given the legal proceedings in the matter of the United States of America v. David E. Gorski, Criminal Case Number 12-CR-10338, have a direct bearing on my final debarment decision, I am extending the decision period and keeping the administrative record open until completion of the legal proceedings.  After the jury trial scheduled for September 29, 2014, if Mr. Ianuzzi and Legion Construction have no further information to add to the record, I will render my decision.

34.     With the Gorski trial not scheduled to conclude until at least October 2014, the minimum length of this additional extension would be approximately five months, several times as long as the period within which the FAR requires the VA to issue a final decision.

- 8 -

35.     Any new evidence produced in the Gorski trial would by definition be outside the administrative record in these debarment proceedings.  While this evidence (if inculpatory) could support initiation of *new* debarment proceedings against Plaintiffs, it cannot lawfully be used to supplement the existing debarment record, which is closed.

**III.     The Need for Immediate Judicial Relief**

36.     The VA's continued delay will cause Plaintiffs irreparable harm absent judicial intervention.

37.     Since Plaintiffs were suspended by the VA in November 2012, Legion's annual gross receipts have fallen from $31,143,293 (in 2011), to $29,815,079 (in 2012), to $21,937,9393 (in 2013), and finally to a projected $10,000,000 to $13,000,000 in 2014.

38.     Since Plaintiffs were suspended by the VA, the outstanding value of Legion's federal construction contracts in progress has fallen from more than $40,000,000 (in 2012), to approximately $20,000,000 (in mid-2013), to less than $13,000,000 (by the end of 2013), and finally to $6,519,366 as of May 31, 2014.

39.     Plaintiffs inability to bid on additional government contracts has forced Ianuzzi to lay off more than 30 Legion employees.  Ianuzzi has already given notice to three additional employees who will be laid off within a week.

40.     Despite his best efforts to secure business in the private sector, Ianuzzi will soon be unable to support the remaining employees and keep the company in operation.  Legion's remaining six construction contracts are all more than 50% complete, and the company's revenues will soon fall to zero.  If not for the VA's disqualification from government contracting, Ianuzzi could immediately bid for any of the federal construction projects in the Northeast that are regularly set aside for SDVOSBs like Legion.  There are five such projects open for bidding over the upcoming four-week period.  Historically, Legion has been successful on about 20–30% of its bids on government contracts.

41.     In addition to the severe economic harm this imposes on Plaintiffs, this delay also implicates public-welfare concerns and constitutionally protected liberty interests. The service-disabled veterans program is designed to protect the interests and recognize the contributions of people like Ianuzzi who became disabled in the course of their military service. Indefinitely depriving such veterans of their livelihood contravenes congressional efforts to honor these veterans and provide for their welfare following their retirement from active duty.

42.     Without judicial intervention, Legion will close down before October 2014, the earliest possible time that the VA has said a final debarment decision will be issued.

43.     Plaintiffs have sought further clarification from the VA regarding its refusal to issue a timely debarment decision without success. Following repeated failures to receive a satisfactory answer from VA officials, and lacking any other alternative, Plaintiffs commenced this action.

## COUNT ONE

### Administrative Procedure Act, 5 U.S.C. § 706(1):
### Agency Action Unreasonably Delayed or Unlawfully Withheld

44.     The above paragraphs are incorporated herein by reference.

45.     The APA gives a reviewing court the authority to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

46.     The FAR imposes a non-discretionary duty on the debarring official to follow specific procedures and timelines for suspension and debarment of government contractors. These suspension and debarment decisions must be made based on the factual record developed through the process established by the FAR, consistent with the objective of assessing the contractor's present responsibility.

47.     Here, the VA has repeatedly ignored and violated the applicable deadlines in the FAR requiring prompt action on suspension and debarment matters.

48.     In 2012, the VA unjustifiably and unlawfully extended the 12-month suspension period.

49.     In December 2013, the VA issued notices of proposed debarment, contrary to assurances VA personnel made to Plaintiffs' counsel.

50.     The VA's pattern of delay continued in 2014.  On June 2, 2014, Defendant Frye unilaterally extended the otherwise applicable 30-working-day deadline to once again delay issuing a final debarment decision as to Plaintiffs, which was required by the FAR to have been made no later than May 1, 2014.

51.     Moreover, in his June 2 letter, Defendant Frye said that no final decision would be made until October 2014 at the earliest, extending the deadline in the FAR for final decision by several months.  No "good cause" can conceivably exist for this extraordinary extension.

52. The VA does not contend that it is delaying its decision due to inadequate resources or in order to expedite the consideration of competing priorities. Rather, the VA has made clear that the acknowledged delay is based solely on its desire to supplement the current record with potential future evidence adduced at the Gorski trial. If new evidence does emerge at the trial that had a bearing on the present responsibility of Plaintiffs, the VA would be free to bring a new debarment proceeding against the Plaintiffs on the basis of that evidence. But that does not give the VA license to violate the APA and thereby irreparably harm Plaintiffs by delaying final decision.

53. In all, Plaintiffs have been in a state of suspension and debarment limbo since November 2012. This delay in issuing a final debarment decision as the FAR requires, which will total two years once the Gorski trial is complete—and could be longer still, if trial is continued again—is unreasonable and unlawful.

54. In addition, this ongoing and unending delay has the effect of imposing a de facto debarment on Plaintiffs without adhering to the procedural protections afforded by the FAR. By extending the timeframe for issuing a final debarment decision for months beyond the date anticipated by the FAR, and by keeping Plaintiffs on the proposed debarment list in the interim, the VA has de facto debarred Plaintiffs without having to justify this action by issuing a decision based on the existing record.

55. Accordingly, the VA has unlawfully withheld and unreasonably delayed its exercise of a non-discretionary duty in violation of 5 U.S.C. § 706(1). Plaintiffs are entitled to relief under the APA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants and issue the following relief:

a.   A declaratory judgment that the VA has unlawfully withheld and unreasonably delayed issuance of a final debarment decision.

b.   A writ of mandamus and a temporary, preliminary, and permanent injunction directing the VA to issue a final decision as to whether the Plaintiffs are or are not debarred from federal contracting.

c.   A temporary, preliminary, and permanent injunction directing the VA to immediately remove Plaintiffs from the list of debarred contractors unless and until the VA issues such final decision.

d.   An award of such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*Anthony Herman /oer*

Anthony Herman (D.C. Bar No. 424643)
Steven A. Shaw (D.C. Bar No. 933861;
    application for admission to D.D.C. pending)
Gregory C. Padgett (D.C. Bar No. 994032;
    application for admission to D.D.C. pending)
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000 (telephone)
(202) 662-6291 (fax)
aherman@cov.com

*Attorneys for Plaintiffs Legion Construction, Inc.
and Peter A. Ianuzzi, Jr.*

June 20, 2014