**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEGION CONSTRUCTION, INC.,  and
PETER A. IANUZZI, JR.,

               Plaintiffs,

    v .

ROBERT A. McDONALD,
Secretary of Veterans Affairs,
In his official capacity,

JAN R. FRYE,
Veterans Affairs Debarring Official,
In his official capacity,

    and

DEPARTMENT OF VETERANS AFFAIRS

       Defendants.

Civ. No. 14-01045 (RMC)

**PLAINTIFFS' MOTION TO REOPEN**
***LEGION CONSTR., INC. v. GIBSON*, CIV. NO. 14-01045 (RMC)**

Plaintiffs Legion Construction, Inc. ("Legion"), and Peter A. Ianuzzi, Jr. ("Ianuzzi"),

hereby move, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to reopen this case in

light of newly discovered evidence that either was or should have been known by the

Defendants, which, in turn, renders the ongoing application of the Court's interim orders in this

matter inequitable.  *See* Fed. R. Civ. P. 60(b)(2) and (5).

As detailed in the accompanying Memorandum of Points and Authorities, last summer

the Defendants induced the Court to deny Plaintiffs' application for timely due process by

representing that Defendants had "good cause" to delay its debarment decision because the

Department of Veterans Affairs ('VA") did not have the necessary facts to adequately evaluate

the allegations forming the basis of Plaintiffs underlying proposed debarment, and therefore preferred to wait until the federal criminal case against Legion's prior Chief Executive Officer ("CEO") was tried in order to obtain evidence it asserted was necessary to make a final decision. The Court accepted that representation, together with the imminence of that related trial, as "good cause" for the VA delaying its decision.  Unbeknownst to the Court or Plaintiffs, but known or knowable to Defendants, the Defendant-agency itself was – in another matter – using all the investigative abilities and tools, that it implied it did not sufficiently have, and thus, needed to rely on the Justice Department's investigation and trial to timely investigate and resolve similar allegations of misconduct by a government contractor.  Additionally, subsequent events have shown that the trial is not imminent, but has been indefinitely delayed.  Finally, recently discovered evidence indicates that the Government has taken the position that a company can become eligible for new government contracts by separating a former official from a company proposed for debarment, as Plaintiffs have done, which would end the former official's affiliation with the company proposed for debarment.  Each of these facts could have changed the Court's mind in this case.

Pursuant to Local Civil Rule 7(l), Plaintiffs' counsel has spoken with counsel for Defendants who has stated that Defendants take no position on the Motion to Reopen at this time.

A proposed order is attached.

Respectfully submitted,

_____/s/ Russell D. Duncan_____
Russell D. Duncan (D.C. Bar No. 366888), rduncan@shulmanrogers.com
David B. Robbins (D.C. Bar No. 493976; *pro hac vice* admission
pending), drobbins@shulmanrogers.com
Allison Baker Shealy (D.C. Bar No. 48065), ashealy@shulmanrogers.com
Joel D. Schwartz (D.C. Bar No. 465838), jschwartz@shulmanrogers.com
Laura J. Mitchell Baker (MD Bar; *pro hac vice* admission pending),
lbaker@shulmanrogers.com

**Shulman, Rogers, Gandal, Pordy, Ecker, P.A.**
12505 Park Potomac Avenue
6th Floor
Potomac, MD 20854
(301) 230-5200 (telephone)
(301) 230-2891 (fax)

*Attorneys for Plaintiffs Legion Construction, Inc. and Peter A. Ianuzzi, Jr.*

Date:  June 4, 2015

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Legion and Ianuzzi originally brought this action seeking injunctive and mandamus relief against the VA, the immediate past Secretary of the VA, and Jan R. Frye, in their official capacities, because Defendants repeatedly ignored regulatory deadlines requiring them to make a final decision concerning Plaintiffs' exclusions from federal contracting without correspondingly affording Plaintiffs adequate due process.  Defendants initially imposed an unlawfully prolonged suspension and now are unlawfully prolonging a decision on proposed debarment to effect the exclusions of Plaintiffs.  Plaintiffs sought a Temporary Restraining Order and Preliminary Injunction ("Original TRO Motion") and this Court denied Plaintiffs' request based on representations by Defendants that they did not have sufficient, necessary facts and needed to wait until the criminal trial of former Legion, CEO, David Gorski ("Gorski"), which was scheduled to begin on September 29, 2014, in order to use information from that trial in making a determination regarding Plaintiffs' debarment.  June 27, 2014, Order (Docket Entry "D.E." # 9); Aug. 11, 2014, Order (D.E. # 13).

Through documents recently made publicly available *by the Defendant VA* and another federal department, Plaintiffs have newly discovered evidence that would have shown this Court that that the delay was *not* necessary because the Defendants, in fact, had the necessary investigative capabilities to obtain sufficient facts to make its decision.  This new evidence suggests the Defendants knew or should have known that the position they were taking before the Court – a position that went to the heart of the Court's prior decision – was minimally, inaccurate.  Specifically, Plaintiffs have reason to believe that: (1) Defendants had substantially greater investigative capabilities than was understood during the pendency of the case; and (2) Defendants failed to advise the Court at the time of the prior proceeding that the VA could obtain

the necessary facts to make a decision without waiting to see what evidence the Justice Department had at trial.[1]  Moreover, Gorski's trial did not begin on September 29, 2014, as relied upon by the Court, and the trial is now, almost ten months later, stayed pending interlocutory appeal.  Hence, even if the contingencies the Defendants presented and the conditions upon which the Court relied were true at the time, continuing to rely on them materially prejudices the Plaintiffs.

## FACTS

Plaintiff Legion is a service-disabled veteran-owned small business ("SDVOSB") that completes construction projects in New England and the Northeast United States pursuant to contracts with the VA and other federal agencies.  Legion's president and owner, Plaintiff Ianuzzi is a service-disabled veteran of the United States Marine Corps.  Under Ianuzzi's leadership and direction, Legion grew from a three-person company to a company with more than 40 employees at its peak.  To date, Legion has completed nearly 300 federal contracts.

On November 2, 2012, the VA suspended Plaintiffs citing a federal criminal proceeding against Gorski, a former minority owner of Legion.[2]  As a result, Plaintiffs were excluded from receiving government contracts, and agencies were prohibited from soliciting offers from, awarding contracts to, or consenting to subcontracts with Plaintiffs.  By law, this suspension could last twelve months, with a possible extension for another six months.  Without explanation, Defendants failed to remove Plaintiffs from the suspension list at the end of this one year period, and did not request an extension.  Defendants then reneged on a subsequent promise to Plaintiffs of an opportunity to present evidence in support of removal from the list.  Instead,

---

[1]  Additionally, presumably much of that evidence was available to the Defendants because it was likely provided to Gorski's lawyers as part of pretrial discovery.

[2]  David Gorski and his wife, Kim Gorski, also were suspended.

without advance notice, in December 2013 – 14 months after the initial suspension and two months past its deadline for action – Defendants issued notices of proposed debarment to Plaintiffs.

On March 20, 2014, Plaintiffs submitted timely a response to the notices of debarment, triggering a 30-working-days deadline for the Defendant VA to reach a final debarment decision. The VA ignored this deadline as well, and on June 2, 2014, Defendant Frye informed Plaintiffs that the VA unilaterally found "good cause" to extend its deadline for a final decision until the conclusion of Gorski's trial, "keeping the administrative record open until completion of these legal proceedings."  With nowhere else to turn, Plaintiffs sought relief from the Court.

This Court denied Plaintiffs Original TRO Motion, *inter alia*, based on representations by the Defendants that they had "good cause" in further delaying a decision on Plaintiffs' debarment because the Gorski trial was scheduled to begin in a few weeks on September 29, 2014.  June 27, 2014, Order (D.E. # 9); Aug. 11, 2014, Order (D.E. # 13).  Defendants represented that the VA lacked sufficient information to act and thus Defendants had to rely on the trial of Gorski, a former affiliate of Legion, to discover any potentially relevant evidence related to Plaintiffs' debarment.  June 27, 2014, Order (D.E. # 9); Aug. 11, 2014, Order (D.E. # 13).

The parties submitted a Status Report on August 8, 2014 (D.E. # 12), indicating that the U.S. District Court for the District of Massachusetts had denied a motion for reconsideration that would have delayed the Gorski trial.  Thus, when this Court issued its August 11, 2014, Order (D.E. # 13), the Gorski trial was scheduled to begin on September 29, 2014.  Based on that, the Court denied Plaintiffs' Motion for Expedited Discovery and renewed its denial of Plaintiffs' Original TRO, entering a final judgment.  (D.E. # 13).

The Gorski trial did not begin on September 29, 2014, as planned.  A number of evidentiary disputes arose and are currently on appeal to the U.S. Court of Appeals for the First Circuit.[3]  Those matters are still in the briefing stages with appellants' briefs having already been filed and appellee's briefs currently due on or before June 16, 2015, following multiple requests for extension by the United States.[4]  No date has been set for oral argument.  For now, the trial has been stayed indefinitely, while the Defendants have continued to delay action and Plaintiffs proposed debarment and the resulting exclusion from federal contracting continues.

Defendants previously claimed that the VA's own fact-finding efforts were insufficient to support any proposed debarment proceeding.  June 27, 2014, Order (D.E. # 9); Aug. 11, 2014, Order (D.E. # 13).  Recent public documents reveal that the VA, and specifically the VA's own Inspector General, possesses significant investigative capabilities and tools.  In a series of reports, the VA's Inspector General detailed its investigation of a government contractor, FedBid, Inc., and certain executives.[5]  The Inspector General's investigation of FedBid, Inc., was on-going when the Defendants represented that the VA needed to obtain the evidence collected by the Justice Department.  The VA Inspector General's investigation led to a proposed

---

[3]  *See* Ex. 1, *United States v. Gorski*, No. 1:12-cr-10338-FDS-1 (D. Mass.); Ex. 2, *United States v. Gorski*, No. 14-1963 (1st Cir. appeal noted Sept. 15, 2014); Ex. 3, *United States v. Gorski*, No. 14-1964 (1st Cir. appeal noted Sept. 15, 2014); Ex. 4, *United States v. Gorski*, No. 14-2074 (1st Cir. appeal noted Oct. 8, 2014).

[4]  Ex. 2, *United States v. Gorski*, No. 14-1963 (1st Cir. appeal noted Sept. 15, 2014); Ex. 3, *United States v. Gorski*, No. 14-1964 (1st Cir. appeal noted Sept. 15, 2014); Ex. 4, *United States v. Gorski*, No. 14-2074 (1st Cir. appeal noted Oct. 8, 2014).

[5]  *See* Ex. 5, Office of Inspector General, *Review of the Veterans Health Administration's Use of Reverse Auction Acquisitions*, Department of Veterans Affairs (Sept. 26, 2014), http://www.va.gov/oig/pubs/VAOIG-13-01408-294.pdf ("OIG, *Review of the Veterans Health Administration's Use of Reverse Auction Acquisitions*"); *see also* Ex. 6, Office of Inspector General, Administrative Investigation, *Conduct Prejudicial to the Government and Interference of a VA Official for the Financial Benefit of a Contractor, Veterans Health Administration, Procurement & Logistics Office, Washington, DC*, Department of Veterans Affairs (Sept. 26, 2014), http://www.va.gov/oig/pubs/VAOIG-13-03065-304.pdf ("OIG, *Conduct Prejudicial to the Government*").

debarment of FedBid, Inc., similar to the one entered against Plaintiffs. *See* Ex. 7, Administrative Agreement, U.S. Air Force (Feb. 20, 2015),

http://www.safgc.hq.af.mil/shared/media/document/AFD-150220-056.pdf ("FedBid, Inc., Administrative Agreement") (describing VA Inspector General's investigation, presumably VA coordinated proposed debarment and termination of the proposed debarment based on termination of affiliation of chief executive officer).  But the similarities in treatment of Plaintiffs and FedBid, Inc., end there.

   Unlike Plaintiffs' proposed debarment, which has now lasted *over thirty months*, FedBid, Inc.'s proposed debarment was terminated in less than one month based upon steps taken by FedBid, Inc., to end the affiliation and control of the former CEO, who was accused of wrongdoing by the VA following the VA's investigation. *Id.*  These steps were sufficient to convince the Suspending and Debarring Official in the matter that: (a) the former CEO was no longer affiliated with the company; and (b) that FedBid, Inc., was therefore an appropriate candidate for reinstatement to the federal marketplace.  That reinstatement into federal contracting could occur in a VA-coordinated action upon severing the affiliation of the CEO of a company is newly discovered evidence.  Had Defendants informed this Court that they had the substantial capability to investigate alleged contractor misconduct, to coordinate resulting suspension/debarment proceedings, and that ending the affiliation of a corporate officer was sufficient to end a proposed debarment, Plaintiffs may well have received a temporary restraining order and preliminary injunctive relief.

## ARGUMENT

## I. THIS COURT HAS AUTHORITY PURSUANT TO RULE 60 TO REOPEN THIS MATTER.

Provided that the motion is made within a reasonable time, *see* Fed. R. Civ. P. 60(c)(1), the Court may reopen this matter on grounds, *inter alia,* of newly discovered evidence or because continuing to apply a prior judgment going forward is no longer equitable. *See, respectively,* Fed. R. Civ. P. 60(b)(2) (permitting relief from final judgment based on "newly discovered newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"); *and* Fed. R. Civ. P. 60(b)(5). "Reasonable time" in the case of new evidence or misrepresentation must be within a year from the date of the judgment, but when the grounds are that prospective application is no longer equitable, that deadline is measured against when that eventuality manifested. *See* Fed. R. Civ. P. 60(c)(1).  Plaintiffs' motion is timely here because final judgment was entered in this case on August 11, 2014, and because complete information regarding Defendants' actions only recently became public.

Plaintiffs, as movants, here carry the burden of proof.  *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011); *see Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 383–84 (1992); *United States v. 8 Gilcrease Lane,* 668 F. Supp. 2d 128, 130–31 (D.D.C. 2009); *Mazengo v. Mzengi,* 542 F. Supp. 2d 96, 100 n.3 (D.D.C. 2008).  Our burden is to convince the Court to exercise its discretionary power for the purpose of "finding 'a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'"  *Reese v. McGraw-Hill Cos., Inc.*, 293 F.R.D. 617, 621-22 (S.D.N.Y. 2013) (quoting *House v. Sec'y of Health & Human Servs.,* 688 F.2d 7, 9 (2d Cir.1982)), *aff'd sub nom*, *Reese v. Bahash*, 574 F. App'x 21 (2d Cir. 2014) (citing *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001)).

II.   **REOPENING THE CASE IS WARRANTED BASED ON THE NEWLY DISCOVERED EVIDENCE OF THE VA'S SUBSTANTIAL INVESTIGATIVE CAPABILITIES.**

"A party seeking relief pursuant to Rule 60(b)(2) must . . . demonstrat[e] each of the following four elements: (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Duckworth v. United States*, 808 F. Supp. 2d 210, 216 (D.D.C. 2011) (citing *Epps v. Howes*, 573 F. Supp. 2d 180, 185 (D.D.C. 2008)); *Reese*, 293 F.R.D. at 622 (citing *Int'l Bhd. of Teamsters,* 247 F.3d at 392).   Here, Plaintiffs can demonstrate each of the factors required for relief.

A.   <u>**The Newly Discovered Evidence Existed At the Time of This Court's August 11, 2014, Order.**</u>

The newly discovered evidence – (a) that the VA's own Office of Inspector General conducted a complex investigation sufficient to make a decision regarding debarment, as it did regarding FedBid, Inc., from 2013 through September 2014, and which ultimately caused the proposed debarment of FedBid, Inc., in January 2015; and (b) that the separation of a former CEO from a company proposed for debarment could end the former CEO's affiliation and make the company eligible for new government contracts – are facts that existed concomitantly with Plaintiffs' 2014 case.  *See* Ex. 7, FedBid, Inc., Administrative Agreement; Jill R. Aitoro, *FedBid Suspension Lifted After Founder and Chairman Ali Saadat Resigns*, Washington Business Journal (Feb. 23, 2015),

http://www.bizjournals.com/washington/blog/fedbiz_daily/2015/02/fedbid-suspension-lifted-after-founder-and.html

### 1.   The VA Has Substantial Investigative/Fact-Finding Capabilities.

Both before and at the same time as this court was considering Plaintiffs' Original TRO

Motion in which Defendants asserted the need from information from the Gorski trial for its

debarment assessment, the VA was conducting its own, in-depth investigation of matters

involving FedBid, Inc., the results of which were likely shared with the Air Force and

coordinated with the Air Force to effect FedBid, Inc.'s speedy proposed debarment.[6]  As

reflected in reports on the FedBid, Inc., matter issued on September 26, 2014 – a date closer in

time to this Court's decision than was the scheduled start of the Gorski trial – the VA Inspector

General reports concerning its investigative activities,

> "The VA OIG Administrative Investigations Division investigated an
> allegation that Ms. [Susan] Taylor interfered with a review of the FedBid
> contract being conducted by the OIG's Office of Contract Review, and while
> investigating the original allegation, we discovered and investigated Ms.
> Taylor for giving preferential treatment to and engaging in a conflict of interest
> with FedBid, improperly acting as an agent of FedBid before Federal agencies,
> disclosing non-public information to unauthorized persons, misusing her
> position and resources, improperly using transit benefits, and failing to testify
> freely and honestly in matters involving her VA employment. **To investigate**
> **these matters, we interviewed Ms. Taylor, VA employees, as well as non-**
> **VA employees. We also obtained and reviewed contract, personnel, email,**
> **and telephone records, as well as applicable Federal law, regulations, and**
> **VA policy."**

Ex. 6, OIG, *Conduct Prejudicial to the Government* at 2 (emphasis added); *see also* Ex. 5, OIG,

*Review of the Veterans Health Administration's Use of Reverse Auction Acquisitions.*  Defendant

Frye was also interviewed and produced and reviewed documents with investigators as part of

the FedBid, Inc., inquiry.  *See* Ex. 6, *Conduct Prejudicial to the Government* at 25.  These

---

[6]  The VA Acquisition Regulation (VAAR) calls for the VA to coordinate its debarment actions with
other interested federal agencies and provide "any information relevant to the action for consideration in
the decision-making process" all the while "maintain[ing] close coordination with the appropriate official
through completion of a final debarment or suspension decision."  48 C.F.R. § 809.402 (2014).  We
assume that the VA followed its procedures and coordinated the FedBid, Inc., proposed debarment action
with the Air Force.  To the extent necessary, expedited discovery into the VA's treatment of this similar
investigation and proposed debarment action can confirm this assumption.

witness interviews and document gathering make clear that substantial other avenues for investigation were and are available to the VA separate and apart from any reliance on the Justice Department and the results of a criminal trial.

This newly discovered evidence shows that the VA has substantial investigative resources at its disposal.  Yet, the VA: (1) chose not to use its resources here; (2) gave no reason for why it could not treat Plaintiffs as the Government has treated FedBid, Inc., in a similar and presumably VA-coordinated proposed debarment action; and (3) has left Plaintiffs in limbo *30 times longer* than FedBid, Inc.

> **2. The VA-Coordinated FedBid, Inc., Action Reveals That Termination of Affiliation – A Step Which Legion Took Years Ago -- May Make a Company Eligible for New Government Contracts.**

In the prior proceedings, Defendants failed to disclose that separation of an affiliate could render a company subject to proposed debarment once again eligible for new government contracts as the Government agreed to in the FedBid, Inc., Administrative Agreement, Ex. 7.  In this Court's June 27, 2014, and August 11, 2014, Orders (D.E. ## 9 and 13), this Court relied on arguments by Defendants pointing to *Agility Def. & Gov't Servs. v. DOD*, 739 F.3d 586 (11th Cir. 2013), for the proposition that proceedings against Gorski could shoehorn the VA's prolonged exclusion of Plaintiffs into the timeliness exception for legal proceedings against an affiliate. *See* FAR 9.407-4 (and note absence of similar provision in debarment-related FAR 9.406).  However, the presumably VA-coordinated proposed debarment against FedBid, Inc., makes clear that the government considers removal of the CEO to be a change sufficient to sever the current affiliation and "separate today's facts from yesteryear's alleged fraud."  June 20, 2014, Order (D.E. #9).  Although the FedBid, Inc., Administrative Agreement announced this position of the Government on February 20, 2015, it applies to an affiliation that existed when

this Court was considering Plaintiffs' Original TRO Motion and, presumably, could have been applied in debarment proceedings against Plaintiffs who have long ago severed affiliation with Gorski.

Thus, Plaintiffs have newly acquired evidence that their status is much more similar to that of FedBid, Inc., than the facts as set forth in *Agility*. Legal proceedings against a *former* affiliate are not sufficient for the VA to continue Plaintiffs' exclusions. For the affiliation exception to timely decisions to apply here, as the government did in *Agility*, government-initiated "legal proceedings" must "specifically name" Plaintiff Legion or Plaintiff Ianuzzi. *Agility*, 739 F.3d at 590. No such government-initiated legal proceedings exist here. The suspicion and innuendo surrounding Plaintiff Ianuzzi is not legally sufficient to render him or Plaintiff Legion an "affiliate" of Gorski. Instead, the key allegations against Plaintiffs as set forth in the Notice of Proposed Debarment, which relate to Plaintiffs' relationship with former affiliate Gorski, govern any decision regarding debarment of Plaintiffs,. Like FedBid, Inc., Plaintiffs here have severed any ties with Gorski.

For ease of comparison, the following demonstrates the difference between the *Agility* matter and this one; and this matter's similarity to FedBid, Inc.:

|  | Agility Defense & Government Services | Legion Construction | FedBid |
|---|---|---|---|
| Suspension | X |  |  |
| Proposed Debarment |  | X | X |
| Legal Proceedings By U.S. Against **Current** Affiliate | X |  |  |
| Proceedings Against Person/Company with Present Power to Control Affiliate | X |  |  |
| Proceedings Against Specifically Named Affiliate | X |  |  |
| Legal Proceedings By U.S. Against **Former** Affiliate |  | X | X |
| Proposed Debarment Ended After Severing of Affiliation (moving from current to former affiliate) |  |  | X |

Since the facts related to Plaintiffs are in line with those in FedBid, Inc., and FedBid, Inc., makes clear that removal of a CEO is a sufficient change to warrant termination of proposed debarment, these new facts, which were available to the Defendants, but not Plaintiffs, merit reopening this case.

**B.    This Evidence Was Not Available to Plaintiffs Absent Discovery, Which This Court Denied.**

On July 23, 2014, Plaintiffs moved for discovery in this matter, but were denied.  *See* Minute Order of July 25, 2014.  Accordingly, despite due diligence, they were justifiably ignorant of these facts.  The VA's ongoing investigation of FedBid, Inc., was not publicly released until September 2014—one month after this Court dismissed Plaintiffs' case.

Accordingly, Plaintiffs would have no reason to know until after dismissal of its 2014 action that the VA was then investigating FedBid, Inc.  Furthermore, until the February 20, 2015, FedBid, Inc., Administrative Agreement, was made public, Plaintiffs could not know that the VA could coordinate the proposed debarment of the company and the company's prompt release from proposed debarment after separating from its CEO.

### C.   The Evidence Is Admissible and Not Merely Cumulative and Likely Would Have Changed the Outcome, Thus Prejudicing Plaintiffs.

This newly discovered evidence is admissible because it is relevant and a public record, subject to the exception for hearsay set forth in Fed. R. Evid. 803(8).

This evidence is also "of such importance" that it could have changed the Court's denial of Plaintiffs' Original TRO Motion.  If Defendants had acknowledged the VA's substantial investigative capabilities, Defendants could not have argued that the VA had "good cause" to delay a decision on Plaintiffs' debarment until the conclusion of the Gorski trial.  Instead, this Court denied Plaintiffs' Original TRO Motion based on the need for information from the Gorski trial (June 27, 2014, Order (D.E. # 9); Aug. 11, 2014, Order (D.E. # 13)).  All of this is to the prejudice of Plaintiffs, who are prohibited from applying for new federal contracts in the interim and whose business has declined from nearly $30 million in annual revenue before the suspension to $1.3 million so far in 2015.

Further prejudicing Plaintiffs, the fact that separation of a former affiliate may provide justification to terminate debarment proceedings—as it did in the FedBid, Inc., Administrative Agreement, Ex. 7, and as Plaintiffs did when they separated from Gorski—would have rendered any need to rely on the Gorski trial for the development of evidence unnecessary.  Therefore, it is likely that this evidence of the FedBid, Inc., Administrative Agreement would have changed the

outcome of this case.  The expected short delay until the Gorski trial September 29, 2014, may

have also played a role in persuading this Court to decide differently.

Finally, this evidence is not merely cumulative or impeaching.  The fact of the FedBid,

Inc., investigation has not been previously established in Plaintiffs' case and does not merely

impeach Defendants.  Rather, this evidence demonstrates that the VA did not acknowledge its

capabilities as an agency with an Office of Inspector General fully able to conduct complex

investigations, and that severing a CEO from a contractor proposed for debarment is a sufficient

step to demonstrate present responsibility and end a proposed debarment initiated by a VA

investigation.

**III.     REOPENING THE CASE IS WARRANTED BASED ON THE FACT THAT THE INDEFINITE CONTINUANCE OF THE GORSKI TRIAL RENDERS UNREASONABLE WHAT MAY HAVE PREVIOUSLY BEEN A REASONABLE BASIS FOR THE VA TO DELAY ITS ACTION.**

In denying Plaintiffs' Original TRO Motion, the Court concluded that the Plaintiffs failed

to show, *inter alia*, that the agency's delay in acting has been unreasonable, and therefore could

not show a likelihood of success on the merits.  June 27, 2014, Order  at 4 (D.E. # 9).  While the

delay may have been reasonable when Gorski's trial was just a few weeks away, the current

status of Gorski's case in the First Circuit undermines that position, even if the original basis for

it had been grounded in all of the available facts.

Thus, this Court may also reopen this matter based on this new information regarding the

delay of Gorski's trial pursuant to Federal Rule of Civil Procedure 60(b)(5), which the D.C.

Circuit recognized as "'little more than a codification of the universally recognized principle that

a court has continuing power to modify or vacate a final decree.'"  *United States v. Western*

*Electric,* 46 F.3d 1195, 1202 (D.C. Cir. 1995) (quoting 11A Charles A. Wright, Arthur R. Miller

& Mary Kay Kane, *Federal Practice and Procedure* § 2961 (1994)).  The Rule provides that a

court may vacate an order if "applying it prospectively is no longer equitable." *Salazar v. D.C.*, 991 F. Supp. 2d 34, 36 (D.D.C. 2013) (quoting Fed. R. Civ. P. 60(b)(5)).

A change in circumstances meriting relief under Rule 60(b)(5) may include "unforeseen obstacles" that render an order "unworkable." *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 384 (1992)); *see also Pigford v. Veneman,* 292 F.3d 918, 925 (D.C. Cir. 2002); *Pigford v. Glickman,* 127 F .Supp. 2d 35, 38 (D.D.C. 2001).  Certainly, and particularly in light of the fact that the need for the Gorski trial does not seem as necessary as it previously did, continuing to wait for it to take place and keep Plaintiffs in limbo is inequitable.

## CONCLUSION

Plaintiffs' instant Motion to Reopen this case should be granted, so that this Court may consider all of the relevant facts.  For this reason, and such other reasons as the Court may deem just, Plaintiffs request that the Motion to Reopen be granted.


Respectfully submitted this fourth day of June, 2015,

> _____/s/ Russell D. Duncan_____
> Russell D. Duncan (D.C. Bar No. 366888), rduncan@shulmanrogers.com
> David B. Robbins (D.C. Bar No. 493976; *pro hac vice* motion to be filed), drobbins@shulmanrogers.com
> Allison Baker Shealy (D.C. Bar No. 48065), ashealy@shulmanrogers.com
> Joel D. Schwartz (D.C. Bar No. 465838), jschwartz@shulmanrogers.com
> Laura J. Mitchell Baker (MD Bar; *pro hac vice* motion to be filed), lbaker@shulmanrogers.com
>
>
> **Shulman, Rogers, Gandal, Pordy, Ecker, P.A.**
> 12505 Park Potomac Avenue
> 6th Floor
> Potomac, MD 20854
> (301) 230-5200 (telephone)
> (301) 230-2891 (fax)
>
>
> *Attorneys for Plaintiffs Legion Construction, Inc., and Peter A. Ianuzzi, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused the following to be served by email on counsel of

record, the United States Attorney's Office, by email to Assistant United States Attorney Keith

Morgan at Keith.Morgan@usdoj.gov and by ECF on listed counsel:

**Shannon L. Fagan**
United States Attorney's Office for the District of Columbia
Civil Division
501 Third Street, N.W.
Washington, DC 20530
(202) 252-2575
shannon.fagan@usdoj.gov
*Counsel of Record for Defendants Robert A. McDonald, Secretary of Veterans Affairs,*
*Jan R. Frye, Veterans Affairs Debarring Official, Department of Veterans Affairs*


                    /s/ Russell D. Duncan
          Russell D. Duncan (D.C. Bar No. 366888), rduncan@shulmanrogers.com