UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LEGION CONSTRUCTION, INC.<br>and PETER A. IANUZZI, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>SLOAN D. GIBSON, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 14-1045 (RMC) |

**MEMORANDUM OPINION**

Legion Construction, Inc. and its president and owner, Peter Ianuzzi, Jr., have filed a motion to reopen the case that they asked this Court to close almost a year ago. Because they have failed to demonstrate either "newly discovered evidence" or that the Court's judgment "is no longer equitable," their motion will be denied.

**I. FACTS**

Plaintiffs were suspended from federal contracting on November 2, 2012. Suspension Letters [Dkt. 6-2] at 6-9. The Department of Veterans Affairs (VA) based its decision on the October 23, 2012 indictment of Mr. David Gorski, a former minority owner and officer of Legion, for having willfully defrauded the United States by falsely representing Legion as a Service Disabled Veteran Owned Small Business (SDVOSB). *See generally id.* On May 29, 2013, the VA through its Debarring Official notified Plaintiffs that their suspension would continue "pending the completion and outcome of the legal proceedings initiated in the indictment" of Mr. Gorski. Agency Letter [Dkt. 6-3] at 2. That letter contained a lengthy explanation of the cause for suspension and an analysis of the legal standards as applied to the

facts at hand. *See id.* at 3-6. Then on December 20, 2013, the VA notified Plaintiffs that they were proposed for debarment from federal contracting. Agency Letters [Dkt. 6-4]. Those letters went even further, explaining over six pages how the facts supported VA's conclusion. Among the findings of fact were that "Mr. Ianuzzi was an owner and principal of Legion." *Id.* at 3.

Plaintiffs filed suit in this Court on June 20, 2014, seeking declaratory, injunctive, and mandamus relief. Complaint [Dkt. 1] at 2. They also moved the Court to issue a preliminary injunction ordering the VA to issue a final decision on Plaintiffs' proposed debarment. Mot. for Prelim. Inj. [Dkt. 2]. On June 27, 2014, the Court denied Plaintiffs' motion after a hearing on the matter. Order [Dkt. 9]. The Court then stayed the case on July 25, 2014 pending resolution of Mr. Gorski's criminal trial. Minute Order 7/25/2014.

At that point, Plaintiffs asked the Court to do one of two things: either lift the stay and expedite discovery, or "deny the request for preliminary injunction, enter a final order of dismissal, *and thus allow the Plaintiffs to appeal*." Status Report [Dkt. 12] at 3 (emphasis added). Unwilling to lift the stay, for reasons it had already articulated, the Court gave Plaintiffs their second choice: a final order of dismissal from which they could appeal. Order [Dkt. 13] at 3 ("This is a final appealable order."). Plaintiffs never appealed.

Instead, they turned their attention to Mr. Gorski's criminal trial in Massachusetts. *See generally* Opp'n to Mot. to Reopen [Dkt. 27] (Opp'n) at 4-6.[1] After the Massachusetts District Court ruled that the crime-fraud exception to the attorney-client privilege applied, Legion Construction moved to intervene in order to preserve its privilege claim. *Id.* at 5. After a

---

[1] The government's memorandum contains citations to the dockets of Mr. Gorski's criminal case in the District of Massachusetts, No. 12-cr-10388, and to his appeal in the First Circuit, Dkt. Nos. 14-1963, 14-1964, and 14-2074. That procedural history is not disputed by Plaintiffs.

2

hearing, the district court reduced the scope of its previous order but nonetheless ordered Legion to turn over some of the relevant, otherwise-privileged documents under the crime-fraud exception. *Id.* Legion and Gorski have appealed to the First Circuit, where briefing should be completed in September. *Id.* at 6.

In the meantime, Plaintiffs ask this Court to reopen this case because of ostensibly new evidence and the alleged inequity of the Court's judgment going forward. First, Plaintiffs claim to have learned for the first time that the VA "has substantial investigative/fact-finding capabilities." Mot. to Reopen [Dkt. 15] (Mot.) at 11. Second, they have learned "that termination of affiliation [from an alleged wrongdoer] . . . may make a company eligible for new government contracts." *Id.* at 12. Finally, they argue that the Court's final judgment is no longer equitable because it keeps Plaintiffs "in limbo." *Id.* at 17.

## II.  LEGAL STANDARD

The parties do not dispute the legal standard for reopening a case under the Federal Rules of Civil Procedure. The Court may, on "just terms," modify a final judgment in two circumstances relevant here. The first is upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To prevail on a Rule 60(b)(2) motion, the movant "must demonstrate that: (1) the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching." *Duckworth v. United States ex rel. Locke,* 808 F.Supp.2d 210, 216 (D.D.C. 2011).

The second circumstance is where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This is "little more than a codification of the universally recognized principle that a court has continuing power to modify or vacate a final decree." *United States v. Western Electric*, 46 F.3d 1198, 1202 (D.C. Cir. 1995).

Plaintiffs bear the burden in either circumstance. *Rufo v. Inmates of Suffolkt Cnty. Jail*, 502 U.S. 367, 383 (1992); *Green v. AFL-CIO*, 811 F. Supp. 2d 250, 254 (D.D.C. 2011). The Court should wield its "large measure of discretion," *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988), in order to "balance the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

### III. ANALYSIS

The Court is not persuaded by either of Plaintiffs' two arguments to reopen their case and therefore will deny their motion.

#### A. Newly Discovered Evidence Under Rule 60(b)(2)

Plaintiffs hang their hats on two "newly discovered" pieces of evidence. The first is that the VA has investigatory capabilities in excess of what it represented to this Court. As the VA points out, however, its investigatory capabilities are widely—and more important, *publicly*—known. *See Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 207 (D.D.C. 2007) ("Publicly available information cannot constitute newly discovered evidence.") (citing *Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir.1987); *Music Research, Inc. v. Vanguard Recording Soc'y, Inc.*, 547 F.2d 192, 196 (2d Cir.1976)). What is more, the investigatory capabilities relied on by Plaintiffs are those of the VA Inspector General. The IG does not work for the agency, nor can the agency direct or interfere with an IG investigation. *See Truckers*

*United for Safety v. Mead*, 251 F.3d 183, 186 (D.C. Cir. 2001). The Plaintiff's response to this, which is essentially that 'the VA could always ask,' is no response at all. *See* Reply to Defs.' Opp'n [Dkt. 28] (Reply) at 7. The Plaintiffs' surprise at having discovered the IG's subpoena power does not convince the Court to reopen this case.[2]

The second piece of evidence offered by Plaintiffs is an administrative agreement entered into by the U.S. Air Force and FedBid, Inc., Dkt. 15-9. Plaintiffs argue that this "makes clear that the government considers removal of the CEO to be a change sufficient to sever the current affiliation" and thus foreclose debarment. Mot. at 12. This argument, too, falls short. The "government" does not make suspension and debarment decisions; each agency's suspending/debarring official (SDO) does. For that reason, the Air Force SDO's "actions in an unrelated debarment proceeding do not in any way bind the VA or establish precedent that the VA must follow." Opp'n at 10. Far from contradicting the VA's argument, Plaintiffs can only muster that "[o]n information and belief, the VA had at least some role in the FedBid, Inc., proposed debarment by the Department of the Air Force." Reply at 9; *see also* Mot. at 12 (calling the debarment proceeding "presumably VA-coordinated"). Plaintiffs' beliefs and presumptions are not "evidence."

In addition, the administrative agreement between the Air Force and FedBid is not evidence of what the VA's independent SDO could or would have done in Plaintiffs' proceeding. That is because debarment decisions are inherently ad hoc, fact-dependent exercises in which the

---

[2] Even if the Plaintiffs truly were ignorant of the IG's investigatory ability, the Court was not. The prejudice alleged by the Plaintiffs, after all, is that "Defendants' statements to this Court concerning the VA's limited investigative abilities played a role in the Court's decisions." Reply at 7. They urge that "that must be corrected." *Id.* Plaintiffs may rest assured that the Court never underestimated the VA's or the IG's investigatory abilities.

individual SDOs are given considerable discretion.  *See* FAR § 9.402 ("Debarment and suspension are discretionary actions . . . ."); FAR § 9.406-1(a) ("Before arriving at any debarment decision, the debarring official should consider [the following ten] factors . . . ."); *cf. Sloan v. HUD*, 231 F.3d 10, 14 (D.C. Cir. 2000) ("Under the applicable regulations, debarment and suspension are discretionary measures taken to protect the public interest and to promote an agency's policy of conducting business only with responsible persons.") (internal alterations and quotation marks omitted); *Burke v. EPA*, 127 F. Supp. 2d 235, 238 (D.D.C. 2001) (same).

In sum, the administration agreement between the Air Force and FedBid is not an adequate ground to reopen this case.

### B.  Prospective Inequity Under Rule 60(b)(5)

In the alternative, Plaintiffs argue that prospective application of the Court's judgment would be inequitable.  The thrust of their argument is that their motion for a preliminary injunction was denied because Mr. Gorski's trial was fast approaching, and therefore "that the indefinite continuance of the Gorski trial renders unreasonable what may have previously been a reasonable basis."  Mot. at 16.

Plaintiffs overestimate the importance of the trial date on this Court's decision.  The "good cause" under FAR § 9.406-3(d)(1) to delay a final debarment decision was that the Gorski trial had not yet occurred—not that it was imminent.  *See* Order [Dkt. 9] at 6-7 ("VA is not a criminal law enforcement agency; it does not have access to the grand jury testimony or the government's evidence against Mr. Gorski.").  That is no less true today.  Mr. Gorski cannot be compelled to answer the VA's questions with his prosecution on the horizon, whether that horizon is next week or next year.  And although Court noted that the "trial [was] set for

6

September 2014," that merely "*contribute[d]* to good cause" otherwise found.  *Id.* at 7 (emphasis added).  That good cause persists today, and Plaintiffs have not convinced the Court otherwise.

## IV.  CONCLUSION

This motion is in reality a plea to reconsider the Court's final order.  That order was requested by the Plaintiffs specifically so that they could challenge it on appeal, which they have not.  Because they have not carried their burden under Rule 60, the Court will deny their motion to reopen this case.  An Order will issue separately from this opinion.


Date:  July 15, 2015

/s/
ROSEMARY M. COLLYER
United States District Judge